IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Evangelina Hemphill, | ) | C/A No.: 3:11-2309-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| United Parcel Service, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Evangelina Hemphill ("Plaintiff") is suing United Parcel Service, Inc. ("Defendant" or "UPS"). Plaintiff alleges the following causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"): (1) race and sex discrimination; (2) retaliation; and (3) racially hostile work environment. [Entry #1]. This matter comes before the court on Defendant's motion for summary judgment filed on November 7, 2012. [Entry #29]. The motion having been fully briefed [Entry #30, #34], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motion.

I.    Factual Background

Plaintiff, an African-American female, began her employment with Defendant in October 2001. Pl. Dep. I 33:11–15 [Plaintiff's deposition ("I") may be found at Entry #30-11]; Pl. Dep. II 7:9–11 [Plaintiff's continued deposition ("II") may be found at Entry #30-12].[1] In addition to the personnel who perform and supervise Defendant's delivery operations, every UPS district has a full complement of support functions such as Security, Industrial Engineering, Finance/Accounting, Business Development, Human Resources, Plant Engineering, Labor, and Automotive. [Entry #29-6 at 3]. Defendant's Industrial Engineering ("IE") department is devoted to improving the quality and efficiency of its package delivery operations through detailed analysis of the company's processes and systems. *Id.* at 3–4. The IE department is comprised of several different sections, such as the Center of the Future section and the Package section. *Id.* at 4. Each of these sections within the IE department is managed by a Section IE Manager, who in turn reports to the District IE Manager, who is the top management person in the UPS district within the IE department. *Id.* Each of the Section IE managers is responsible for the staff within his section, including both administrative and the supervisor-level personnel. *Id.*

In March 2009, Plaintiff was a full-time supervisor in the Center of the Future section of the IE department in the UPS South Carolina District based in Columbia, South Carolina. Pl. Dep. I 54:18–55:7. During this time, the majority of Plaintiff's time was devoted to Defendant's "satellite" program used to coordinate drop-off and pick-up

---

[1] The deposition citations are to the page numbers of the depositions (and not the cm/ecf page numbers).

points for package cars in remote areas so as to minimize transportation costs, as well as bonus auditing, which involved auditing the time records of package car drivers. Pl. Dep. I 49:13–51:14.

Prior to her 2009 maternity leave, Plaintiff's Section IE Manager was Randy Hicks (white male), and the District IE Manager for the South Carolina District was Vincent Meeks (African-American male). Pl. Dep. I. 54:18–55:16. During Plaintiff's maternity leave, Meeks was reassigned to another department and Kevin Horgan (white male) replaced him as District IE Manager. *Id*. Plaintiff returned from maternity leave in March 2009. *Id*.

On July 21, 2009, Plaintiff returned to work after having been on short term disability leave since July 8, 2009 for food poisoning. [Entry #29-6 at 56]. Although Hicks was on vacation, he left Plaintiff a message instructing her to move to a new desk at work. *Id*. Additionally, Plaintiff was directed on July 21, 2009, to begin notifying her Section Manager of her arrival and departure time via email. *Id.* at 57. On July 23, 2009, Horgan, who had been out of town on business since Plaintiff's return, met with her. Horgan told her that Hicks had been monitoring her attendance and found that she was either absent, late, or left early a considerable amount. *Id.* at 58. Plaintiff claims that she questioned Horgan about why he believed Hicks' notes without asking for her explanation and was told that Horgan trusted Hicks as her manager. *Id.*

Plaintiff emailed Hicks upon his return from vacation about meeting to discuss the attendance issues he had reported. *Id*. at 60. On July 29, 2009, Hicks, Horgan, and Plaintiff met to discuss the attendance issues. *Id*. at 61. Plaintiff questioned Hicks about

3

why he had not first conveyed his concerns about her attendance to her, and Horgan agreed that Hicks should have done so. *Id*. However, when Plaintiff continued to question Hicks, Horgan told Plaintiff it was her job to communicate with Hicks. *Id.* Horgan further told her that if she had talked to him in the way she talked to Hicks, he would have thrown her out of his office and onto the street.[2] *Id*. Plaintiff felt that this was a physical threat. Pl. Dep. II 22:4–8.

Plaintiff was instructed to draft and send to Hicks a written summary of the meeting to demonstrate her understanding of the issues reviewed with her. [Entry #29-6 at 62]. Plaintiff sent an email stating "I understand no matter what you do, say, or report to me or about me, you are right/correct because you are the manager and I am only a supervisor." *Id.* at 62–63. On July 30, 2009, Horgan called Plaintiff and Hicks into another meeting to discuss the email. *Id*. Plaintiff alleges that Horgan was yelling during the meeting, pointing his finger and cell phone in her face, and walking toward her in a threatening manner. *Id*. at 63.

On August 21, 2009, Plaintiff sent an email to Human Resources Manager Frank Morris complaining of unfair treatment by Hicks and Horgan. [Entry #29-6 at 55]. Plaintiff copied Horgan, Hicks, District Manager Richard McArdle, and HR Manager Paula Rowland on the email. *Id.* Plaintiff's email stated that she had been spoken to in a disrespectful and degrading manner, had been verbally threatened about her job and life,

---

[2] Plaintiff testified during her deposition that Horgan threatened to throw her out of his window and onto the street [Pl. Dep. II 107:4–11], but Plaintiff also testified that there was no doubt that he used the word office [Pl. Dep. II 107:12–16]. Although in the recitation of the facts, the undersigned has used the version Plaintiff alleges in her notes recorded soon after the event, the undersigned finds it immaterial whether the word "office" or "window" was used.

4

and had been embarrassed and humiliated. *Id*. Plaintiff attached to the email a detailed timeline of the alleged unfair treatment. Neither Plaintiff's email nor the attached chronology mentions race or sex as basis for the alleged unfair treatment or hostile work environment. *Id*. at 55–69.

Sometime after Plaintiff sent her email, Horgan reassigned her to a planner supervisor position, effective September 4, 2009. According to Horgan, he made the decision to reassign Plaintiff for the following reasons: 1) it would provide accountability and structure for Plaintiff; 2) Plaintiff could start with "a clean slate" under new Section Manager Quinton Mills (African-American male); and 3) it would allow her to develop her core IE skills, as Plaintiff's prior position had consisted of ad-hoc projects. Horgan Dep. 47:11–19; 51:2–23 [Horgan's deposition may be found at Entry #30-13]. Although her title changed, Plaintiff remained a full-time supervisor employee with the same compensation and benefits. Plaintiff's physical location did not change and she continued to work at her previous desk. Plaintiff's prior job responsibilities were absorbed by the planner supervisors, including Plaintiff. Pl. Dep. I 63:19–64:4.

In December 2009, Plaintiff filed a charge of discrimination with the EEOC alleging race and sex discrimination, retaliation, and hostile work environment. [Entry #30-6]. Beginning April 1, 2010, Plaintiff took leave from UPS.[3] In June 2010, Horgan

---

[3] Without citing any evidence in support, Plaintiff states that she took an official leave of absence from April 1, 2010, until October 12, 2010, because her doctor took her out of work due to the stress and anxiety she was facing on the job. [Entry #30 at 17]. Although Plaintiff mentions that she was six months pregnant "during this time," she fails to note the effect the birth of her baby and any associated maternity leave had on this leave of absence. *Id*. Plaintiff testified her baby was almost four months old when she returned to work on October 12, 2010. Pl. Dep. II 73:1–6.

5

was transferred to UPS Headquarters in Atlanta to be the Contract Administrator in the corporate Real Estate Department. [Entry #29-6 at 6]. On October 12, 2010, after Plaintiff returned from an approximate six-month leave, she was placed on the sunrise sort as an Operation Supervisor, causing a change in her work hours. Pl. Dep. II 69:21–70:13. On July 11, 2011, Plaintiff was reassigned to a position of Preload Supervisor in Defendant's Sumter, South Carolina facility, which required a commute. Pl. Dep. II 74:13–75:7.

II.   Discussion

   A.   Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

   B.   Analysis

      1.   Race and Sex Discrimination

In a Title VII claim, absent direct evidence of discrimination, as is the case here, Plaintiff must prove her allegations under the burden-shifting analysis of *McDonnell*

6

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802. To state a prima facie claim of race and sex discrimination, Plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Defendant argues that Plaintiff has not proved a prima facie case because she cannot establish that her September 2009 reassignment[4] constitutes an adverse employment action. The law is clear that not every personnel decision constitutes an adverse employment action for the purposes of a disparate treatment claim. *Frazier v. Wal-Mart*, No. 6:10-cv-2007, 2012 WL 554478, at *4 (D.S.C. Feb. 1, 2012) (finding plaintiff's allegations did not constitute adverse employment actions "because they do not constitute a significant change in employment status"). The Fourth Circuit has held that a transfer or reassignment does not constitute an adverse employment action unless it involves a loss of pay or benefits, or some other tangible, material detrimental change in a plaintiff's terms and conditions of employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (finding reassignment did not rise to level of adverse action for purposes of Title VII discrimination claim, explaining while "[i]t is clear that [the plaintiff] found his new role and responsibilities with [the employer] less appealing . . . that fact in and of itself does not constitute adverse employment action," rather the

---

[4] Plaintiff does not allege discrimination based on any alleged adverse employment action other than her September 2009 reassignment.

determinative "question is whether there was a change in the terms or conditions of his employment which had a 'significant detrimental effect' on his opportunities for promotion or professional development").

Plaintiff describes her September 2009 reassignment as a lateral transfer. Pl. Dep. I 62:2–24. However, she contends that the reassignment constitutes an adverse employment action because she had to work harder and the job was more stressful. [Entry #30 at 16]. Specifically, Plaintiff claims that although her salary and benefits remained the same, her unfamiliarity with the job forced her to work longer hours for the same pay, which she equates to a salary cut. Pl. Dep. II 61:15–25. Plaintiff's argument is unavailing, as she is a salaried employee and not paid by the hour. In addition, "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Boone v. Goldin*, 178 F.3d 253, 256–257 (4th Cir. 1999). Here, Plaintiff's vague allegations that she worked more hours and was more stressed in her reassignment are insufficient to show that she suffered an adverse employment action. Because Plaintiff cannot prove an essential element of her prima facie case, the undersigned recommends Defendant be granted summary judgment on her claim of race and sex discrimination.

2.  Retaliation

Title VII forbids employers from retaliating against their employees for exercising their rights under the statutes, which are considered "protected activities." 42 U.S.C. §

2000e–3(a); 29 U.S.C. § 623(d).  "Protected activities fall into two distinct categories: participation or opposition. . . . An employer may not retaliate against an employee [for] participating in an ongoing investigation or proceeding . . . nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

To set forth a prima facie case of retaliation pursuant to Title VII, Plaintiff must first establish that: (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).

a.  Protected Activities

Plaintiff first claims that her August 21, 2009 email to Morris in which she complained of unfair treatment by Horgan and Hicks constitutes a protected activity. A plaintiff need not have filed a formal complaint with the EEOC or a state deferral agency to engage in protected activity.  Complaints to supervisory or management employees concerning harassment or discriminatory treatment, as well as informal complaints, filing of internal grievances, and complaints to an agency, are included within the definition of protected activity.  *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, *cert. denied*, 487 U.S. 1218 (1988); *Mitchell v. Baldridge*, 759 F.2d 80 (D.C. Cir. 1985). However, the statute only protects employees who have opposed practices made unlawful by Title VII. *McNair v. Computer Data Systems, Inc.*, 172 F.3d 863 (Table), 1999 WL 30959, *5 (4th

9

Cir. 1999). It does not protect "practices the employee simply thinks are somehow unfair." *Id.*

Here, Plaintiff's email to Morris, including the accompanying chronology of events she authored, did not allege discrimination or unfair treatment based on race or sex. Therefore, Plaintiff cannot set forth a prima facie case of retaliation based on her August 21, 2009 email.

Plaintiff also claims, and Defendant does not dispute, that her December 2009 EEOC charge constitutes a protected activity. Therefore, the undersigned proceeds to analyze Plaintiff's claim of retaliation based upon her EEOC charge.

      b.  Causal Link Between EEOC Charge and Reassignments

Plaintiff claims that her October 2010 reassignment to sunrise service and her July 2011 transfer to Defendant's Sumter, SC facility constitute adverse employment actions despite no change in salary or benefits. Assuming, without deciding, that these reassignments constitute adverse employment actions, Plaintiff has failed to show a causal link between her December 2009 EEOC charge and the reassignments. Plaintiff's only argument that the reassignments were caused by her EEOC charge is her own speculative testimony that, because Horgan had become a corporate employee as a Real Estate Contract Administrator, he was in a position to influence her assignments. Pl. Dep. II 75:22–76:11; 77:2–13.

Even if Plaintiff's self-serving deposition testimony that Horgan could influence her reassignments were accepted as true, Plaintiff has failed to show a causal connection between her protected activity and her reassignments. Although "very close" temporal

10

proximity can, in some cases, be sufficient alone to establish causation, an extended period of time between protected activity and alleged retaliation "suggests, by itself, no causality at all." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). In this case, the respective 10- and 18- month gaps between the protected activity and the reassignments are insufficient to demonstrate a causal connection. *See, e.g. Pascual v. Lowe's Home Centers, Inc.*, 2006 WL 2226571 at *4 (4th Cir. 2006) (affirming summary judgment when only evidence of causal connection was three to four month time gap). Therefore, because Plaintiff cannot show a causal connection through temporal proximity, she must prove retaliatory animus. Here, even if Horgan had the ability to influence Plaintiff's reassignments, the record is devoid of any evidence of retaliatory animus. Therefore, Plaintiff has failed to set forth a prima facie case of retaliation, and the undersigned recommends Defendant be granted summary judgment on this claim.

        3.        Hostile Work Environment

To establish a prima facie showing of a hostile work environment under Title VII, a plaintiff must show that the offending conduct: (1) was unwelcome; (2) was because of her race; (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment; and (4) was imputable to her employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008).

Plaintiff claims she was subject to a hostile working environment based on the following offending conduct:

- Horgan was curt when Plaintiff introduced herself to him in March 2009, Pl. Dep. II 8:4–22;
- Plaintiff's desk was relocated to a different area in the IE department in July 2009, Entry #29-6 at 56–57;

11

- Plaintiff was required to communicate her arrival and departure time in July and August 2009, *id*.;
- Plaintiff's laptop was replaced with a desktop computer in July 2009, Pl. Dep. I 118:1–12;
- Horgan's demeanor was allegedly physically threatening in a meeting and he told her he would "throw her out of his office and onto the street" if she spoke to him the way she spoke to Hicks, Entry #29-6 at 61;
- Plaintiff was not allowed to attend United Way events sponsored by UPS in July and August 2009, Pl. Dep. I 119:14–121:13.

To show a hostile work environment, Plaintiff must show that the work environment was not only subjectively hostile, but also objectively so. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Such proof depends upon the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff has not shown that the work environment was objectively hostile. Business decisions such as the location of her desk, the decision to give her a desktop computer instead of a laptop, and the requirement that she notify her superiors of her arrival and departure times do not create an abusive work environment. It is not the role of the court to second guess the wisdom of such business decisions. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992). Similarly, curt behavior does not create a hostile work environment, as Title VII is not a "general civility code." *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Although Plaintiff allegedly felt physically threatened by Horgan's alleged comment that he would throw her out of his office, there is no evidence that such a comment was objectively threatening or that he

made other threatening comments. The comment, standing alone, does not rise to the severe and pervasive level required to make out a hostile work environment claim. Therefore, Plaintiff has failed to allege behavior that is objectively severe and pervasive to prove a prima facie case.

In addition, Plaintiff has set forth no evidence that the alleged hostile work environment was because of her race. Plaintiff's only support for her claim that the offensive conduct was racially-motivated is that none of her white counterparts were subjected to such treatment. [Entry #30 at 29–30]. Without any evidence of race-based conduct, Plaintiff is impermissibly attempting to make a disparate treatment claim within her hostile work environment claim. *Bailey v. Int'l Paper*, No. 2:11-3013-PMD-BM 2012 WL 405719 (D.S.C. 2012) (noting that a claim of disparate treatment cannot be transformed into a hostile work environment claim without meeting the distinct elements of each claim); *Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003) (upholding summary judgment of a hostile work environment claim where the facts alleged were not related to gender, race, or age harassment despite allegations of disparate treatment). Because Plaintiff has failed to prove a prima facie case, the undersigned recommends Defendant be granted summary judgment on Plaintiff's hostile work environment claim.

III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #29] be granted.

13

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

June 24, 2013                                         Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).