IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Evangelina Hemphill, | ) | C/A No. 3:11-2309-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| United Parcel Service, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On August 29, 2011, Evangelina Hemphill ("Plaintiff") filed a lawsuit against United Parcel Service, Inc. ("Defendant" or "UPS"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). ECF No. 1. Defendant filed an answer on September 21, 2011. ECF No. 5. On November 7, 2012, Defendant filed a motion for summary judgment, ECF No. 29, to which Plaintiff responded on November 20, 2012, ECF No. 30. Defendant filed a reply, ECF No. 34, on December 3, 2012.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On June 24, 2013, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's motion for summary judgment and dismiss Plaintiff's case. Plaintiff filed objections on July 11, 2013, ECF No. 36, and Defendant filed a reply on July 29, 2013, ECF No. 37.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African-American female, began her employment with Defendant in October 2001. ECF No. 30-11 at 29. Defendant is a small-package delivery company that serves customers worldwide. ECF No. 29-6 at 1. Defendant's operations in the United States are organized

geographically by district. *Id.* Each UPS district is supported by a number of departments that perform various functions, including security, industrial engineering, finance/accounting, business development, human resources, plant engineering, labor, and automotive. *Id.* at 3. The Industrial Engineering Department ("IE Department") focuses on improving the quality and efficiency of Defendant's package delivery operations. The IE Department is composed of several different sections, including the "Center of the Future" section ("COF") and the "Package" section. *Id.* at 4. Each section within the IE Department is managed by a Section IE Manager, who in turn reports to a District IE Manager. *Id.* A Section IE Manager is responsible for overseeing the staff within his or her section, including both administrative and supervisory personnel. *Id.*

For the first seven years of Plaintiff's employment with Defendant, Plaintiff was employed in various positions within the IE Department, during which Plaintiff contends that she had "no problems" and enjoyed a "harmonious and positive relationship with all of her superiors." ECF No. 1 at 2, ECF No. 30-11 at 33-39. In November 2008, Plaintiff took a maternity leave and returned to work on March 2, 2009. ECF No. 1 at 2. At the time of her return, Plaintiff was a full-time supervisor in the COF section of the IE Department in the South Carolina District based in Columbia. ECF No. 30-11 at 54-55. Prior to taking her maternity leave, Plaintiff's District IE Manager was Vincent Meeks ("Meeks"), an African-American male, and her Section IE Manager was Randy Hicks ("Hicks"), a Caucasian male. Upon returning from her maternity leave on March 2, 2009, Plaintiff learned that Meeks had been reassigned to another department, and Kevin Horgan ("Horgan"), a Caucasian male, had replaced Meeks as Plaintiff's District IE Manager. *Id.* Hicks remained Plaintiff's Section IE Manager. *Id.*

Between July 8 and July 20, 2009, Plaintiff took short-term disability leave due to food

poisoning. ECF 29-6 at 56. When Plaintiff returned from her leave on July 21, 2009, she had a voicemail message from Hicks, who was out of the office on vacation, directing her to move to a new desk in the office. *Id.* Plaintiff was also instructed to begin notifying Hicks of her daily arrival and departure time via email. *Id.* at 57. On July 23, 2009, Horgan, who had been out of the office since Plaintiff's return, met with Plaintiff. *Id.* at 57. Also in attendance at this meeting was Kenny Flowers, a Human Resources employee of Defendant. *Id.* at 57-58. During the meeting, Horgan informed Plaintiff that Hicks had been monitoring her attendance and had found that on a considerable number of occasions, Plaintiff had either been absent, arrived late, or left early. *Id.* Horgan indicated that he was basing these attendance issues off of Hicks' notes regarding Plaintiff's attendance. *Id.* at 58. Plaintiff inquired as to why Horgan believed Hicks' notes without asking Plaintiff for her explanation, and Horgan responded that he trusted Hicks as Plaintiff's manager to provide accurate information. *Id.*

On July 29, 2009, after Hicks returned from vacation, Plaintiff had a meeting with Hicks and Horgan to discuss the attendance issues. *Id.* at 61. During the meeting, Plaintiff asked Hicks why he had not consulted her about any attendance issues prior to informing Horgan of such issues. *Id.* In response, Plaintiff contends that Horgan acknowledged that Hicks should have consulted with Plaintiff first. *Id.* However, Plaintiff alleges that Horgan then yelled at her, saying "It is your job to communicate with [Hicks] . . . . [Hicks] is your manager so you can't challenge him." *Id.* When Plaintiff continued to question Hicks regarding his lack of communication, Horgan responded in an angry tone, stating that if Plaintiff had talked to him the way she had talked to Hicks, he would have

3

thrown her out of his office and onto the street.[1]  *Id.*  Plaintiff testified in her deposition that she viewed this statement as a physical threat.  ECF No. 30-12 at 109-10.

Following the meeting, Hicks instructed Plaintiff to prepare a written summary of the meeting demonstrating her understanding of the issues reviewed at the meeting.  ECF 29-6 at 5.  In response, Plaintiff sent an email to Hicks stating the following: "Per your request of my understanding of the meeting yesterday morning with [Horgan], you and myself, I understand that no matter what you do, say, or report to me or about me, you are right/correct because you are the manager and I am only a supervisor."  *Id.*  The next day, July 30, 2009, Plaintiff was called into another meeting with Hicks and Horgan, during which Horgan informed Plaintiff that her email was unprofessional and childish.  *Id.* at 63.  Plaintiff contends that during this meeting, Horgan yelled at her, pointed his finger and cell phone in her face, and walked towards her in a very threatening manner.  *Id.*  Horgan also instructed Plaintiff to send another email more appropriately summarizing the July 29, 2009 meeting.  *Id.*

Following these meetings, Plaintiff contends that Horgan began to remove Plaintiff from positions of responsibility and assign Plaintiff "unrealistic and demeaning administrative tasks."  ECF No. 30 at 13-14.  For example, prior to Horgan's becoming her District IE Manager, Plaintiff contends that she organized and planned many events with United Way.  ECF No. 30-12 at 50.

---

[1]  The court recognizes that some confusion exists as to whether Horgan threatened to throw Plaintiff out of his window or out of his office.  Plaintiff's deposition testimony indicates at one point that he used the word window, ECF No. 30-12 at 109, while at another point that he used the word office.  *Id.*  The court agrees with the conclusion of the Magistrate Judge that whether the word "office" or "window" was used is immaterial.  ECF. No. 35 at 4.  However, the court uses the word "office" for the purposes of its recitation of the facts because Plaintiff used the word "office" in her notes recorded soon after the meeting.  ECF No. 29-6 at 61.

However, with Horgan as her District IE Manager, Plaintiff contends that she was no longer allowed to plan the United Way events and she was not "even allowed to go to the event[s]." *Id.* Further, Horgan assigned Plaintiff to work on a Hurricane Contingency Guide, which involved making a manual for every South Carolina District Center. *Id.* at 52. Plaintiff viewed this assignment as being appropriate for an "administrate assistant to do, not a full time supervisor." *Id.* Further, Plaintiff contends that after she completed the Hurricane Contingency Guide, Horgan failed to recognize her work and instead "recognized another person from the department for organizing and completing the task." *Id.* at 53.

On August 21, 2009, Plaintiff sent an email to Human Resources Manager Frank Morris ("Morris") regarding alleged unfair treatment by Hicks and Horgan. *Id.* at 55. Specifically, the email noted that Plaintiff believed she had been spoken to "in a very unprofessional, disrespectful and degrading manner," that she had been "verbally threatened about [her] job and [her] life," and that she had been "openly embarrassed and humiliated." *Id.* The email contained an attachment detailing a chronology of events beginning with Plaintiff's return from short-term disability leave on July 21, 2009 and ending on August 20, 2009, the day before Plaintiff sent the email. *Id.* at 55-69. The email and attachment detailed the alleged unfair treatment of Plaintiff throughout this time period. *Id.* However, the email did not contain allegations that this unfair treatment was based on race or sex. *See id.*

Shortly after Plaintiff sent this email to Morris, Horgan reassigned Plaintiff from her supervisory position in the COF section of the IE Department to a supervisory position as a Package Planner within the Package section of the IE Department. *Id.* at 5-6. This reassignment became effective on September 4, 2009. *Id.* Horgan contends that he made the decision to reassign Plaintiff

5

because the new position would provide structure, accountability, and an opportunity for Plaintiff to start with a "clean slate" under Section Manager Quinton Mills ("Mills"), an African-American male. ECF 30-13 at 47, 52. Plaintiff recognizes that her reassignment was a "lateral" move and she remained a full-time supervisor with the same compensation and benefits received in her previous position. ECF No. 30-11 at 62. Further, Plaintiff's prior job responsibilities were absorbed by the Package Planners, including Plaintiff. *Id.* at 63-64. However, Plaintiff contends that her new position was more difficult than her previous position, required more hours, and required training that she did not effectively receive. ECF No. 30-12 at 63.

Following this reassignment, on December 17, 2009, Plaintiff filed a charge of discrimination with the EEOC alleging race and sex discrimination, retaliation, and hostile work environment. ECF No. 30-6. Plaintiff continued in her supervisory position as a Package Planner until April 1, 2010, whereupon Plaintiff took a leave of absence while six-months pregnant "due to stress and anxiety." ECF No. 30-12 at 68-69. In June 2010, while Plaintiff was still out on leave, a reorganization and realignment of Defendant's districts moved Horgan from the District IE Manager position in the South Carolina District to a Contract Administrator position in the Corporation Real Estate Development Department in Atlanta, Georgia. ECF 29-6 at 6. Horgan contends that in this position, he has no control, responsibility, or authority over the personnel decisions in Plaintiff's district. *Id.*

Plaintiff returned to work from her leave on October 12, 2010. Upon return, Plaintiff was reassigned to the position of Operations Supervisor at Defendant's facility in Columbia, South Carolina. ECF No. 30-12 at 67-68. This position involved a change in Plaintiff's work hours. *Id.* at 70. On July 11, 2011, Plaintiff was again reassigned to a position as a Preload Supervisor in Defendant's Sumter, South Carolina facility. *Id.* at 79. This position involved a longer commute

for Plaintiff to and from work each day. *Id.* at 79. Although Horgan was not Plaintiff's supervisor at the time of either of these reassignments, Plaintiff contends that Horgan's reassignment to the position of Contract Administrator allowed him to assert "more influence and power" and he used this power to "continue his campaign of harassing and discriminating against [Plaintiff]." ECF No. 30 at 19. At the time of her deposition on September 21, 2012, Plaintiff was still employed by Defendant as a Preload Supervisor, but had relocated to Defendant's Columbia, South Carolina facility. *Id.* at 79-80.

## II. STANDARD OF REVIEW

### A. *Summary Judgment Standard*

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A party may not create a triable issue of fact at summary judgment by contradicting deposition testimony with a subsequent affidavit. *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999).

### B. *Magistrate Judge's Report and Recommendation*

The Magistrate Judge makes only a recommendation to this court. The recommendation has

no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

**A. *Race/Sex Discrimination***

Plaintiff contends that her reassignment to the Package Planner position in September 2009 was motivated by her race and sex in violation of Title VII. ECF 1 at 3-5. Defendant contends that Plaintiff cannot establish a prima facie case of race or sex discrimination and moves for summary judgment. Specifically, Defendant argues that Plaintiff has failed to prove that her reassignment constitutes an adverse employment action and that Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reasons for its employment action were a pretext for unlawful discrimination. ECF No. 29-1 at 9.

**1. *Legal Standard***

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). A plaintiff can establish claims of discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set

forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). Where there is direct evidence of discrimination, the <u>McDonnell Douglas</u> burden-shifting framework does not apply. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

However, if a plaintiff cannot present direct evidence of discrimination, he can proceed using the <u>McDonnell Douglas</u> method of proof. To establish a prima facie case of disparate treatment based on race or sex, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the proffered reason was "not its true reason[], but [was] a pretext." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

**2.** *Magistrate Judge's Report and Recommendation*

At the outset, the Magistrate Judge observed that Plaintiff's race and sex discrimination claim is not supported by direct evidence. As such, the Magistrate Judge proceeded with a race and sex discrimination analysis under the burden-shifting framework set forth in <u>McDonnell Douglas</u>. ECF

No. 35 at 8. In doing so, the Magistrate Judge first considered whether Plaintiff's September 2009 reassignment constitutes an adverse employment action for the purposes of Title VII. The Magistrate Judge noted that Plaintiff herself describes her September 2009 reassignment as a "lateral transfer," meaning that Plaintiff's salary and benefits remained the same. *Id.* While the Magistrate Judge acknowledged that Plaintiff contends her unfamiliarity with the job forced her to work longer hours for the same pay, thereby amounting to a salary cut, the Magistrate Judge found this argument unavailing because Plaintiff "is a salaried employee and not paid by the hour." *Id.* In that regard, the Magistrate Judge found that "Plaintiff's vague allegations that she worked more hours and was more stressed in her reassignment are insufficient to show that she suffered an adverse employment action." *Id.* The Magistrate Judge recommended that the court grant Defendant's motion for summary judgment as to Plaintiff's Title VII claim for race and sex discrimination. Because the Magistrate Judge found that Plaintiff failed to show an adverse employment action, the Magistrate Judge did not analyze the other three elements of a prima facie case of race or sex discrimination.

### 3.  *Objections*

Plaintiff objects to the Magistrate Judge's determination that Plaintiff's September 2009 reassignment does not constitute an adverse employment action. Plaintiff contends that the evidence presented by Plaintiff creates genuine issues of material fact with regard to whether Plaintiff's reassignment had "substantial detrimental effects" on Plaintiff. ECF No. 36 at 5. For example, Plaintiff contends that the Magistrate Judge misconstrued Plaintiff's deposition testimony as indicating that Plaintiff's unfamiliarity with her new position led to her increased working hours. Instead, Plaintiff argues that her deposition testimony indicates that her new position required longer working hours because it was a "more difficult job" that "definitely required training." *Id.* at 6.

Further, Plaintiff contends that the Magistrate Judge's consideration that Plaintiff was a salaried employee and not an hourly employee is "completely irrelevant" because such a distinction "has no bearing on the fact that [Plaintiff] was making less money per hour worked as a result of her transfer." *Id.* at 7. Overall, Plaintiff contends that evidence of her "increased hours and harder work gives rise to a genuine issue of material fact regarding whether the September 2009 reassignment was punishment as an adverse employment action." *Id.*

**4.** *Analysis*

After careful review of the record, the court concurs with the Magistrate Judge's recommendation regarding Plaintiff's Title VII race and sex discrimination claim. As was correctly noted by the Magistrate Judge, Plaintiff's race and sex discrimination claim is governed by the McDonnell Douglas burden-shifting framework, as Plaintiff has presented no direct evidence of discrimination. Plaintiff, as an African-American female, is a member of a protected class. However, even assuming that Plaintiff was performing her job in a satisfactory manner and that Plaintiff was treated differently from other similarly situated employees, the court finds that Plaintiff has not satisfied the third element of proof, that is, the occurrence of an adverse employment action.

The Fourth Circuit has recognized that not every personnel decision constitutes an adverse employment action actionable under Title VII. *See Page v. Bolger*, 645 F.2d 227, 223 (4th Cir. 1981) ("[T]here are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII."). Rather, "[a]n adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). "A reassignment can only form

the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." *Id.* at 376 (internal quotations omitted).

Here, Plaintiff's allegations of discrimination are based solely on her September 2009 reassignment to the position of Package Planner. Plaintiff's deposition testimony acknowledges that her September 2009 reassignment was a "lateral move" and further notes that "having a lateral move did not affect [her] pay and benefits." ECF No. 30-11 at 62. Further, the position of Package Planner was a supervisory position at the same level as Plaintiff's previous supervisory position. However, despite Plaintiff's salary, benefits, and supervisory status remaining the same, Plaintiff contends that her new position required more hours and more training than her previous position, effectively amounting to a decrease in compensation. *Id.* Further, Plaintiff contends that she experienced increased stress and anxiety as a result of the reassignment. *Id.* at 193. The court finds that these contentions are insufficient to show that the reassignment had a "significant detrimental effect" on Plaintiff. *See Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999) ("[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position"); *Jyachosky v. Winter*, 343 F. App'x 871, 877 (4th Cir. 2009) (finding the plaintiff failed to show a significant detrimental effect due to stress because the plaintiff provided "no explanation as to how the reassignment . . . impacted her other than the ordinary stresses associated with a new job"); *Green v. York Cnty. Library*, CA 0:09-01791-JFA, 2011 WL 4089320, at *3 (D.S.C. Sept. 13, 2011) (finding an increase in the plaintiff's job duties without a decrease in hours or an increase in compensation did not cause a "significant detrimental effect" on the plaintiff's employment). As

such, the court finds that Plaintiff has failed to show that her September 2009 reassignment constitutes an adverse employment action under Title VII.

Even assuming, *arguendo*, that Plaintiff's September 2009 reassignment did constitute an adverse employment action and that Plaintiff has satisfied the other three elements of proof, under the <u>McDonnell Douglas</u> framework, the burden then shifts to Defendant to produce evidence of a legitimate, non-discriminatory reason for its employment action.  Horgan's testimony indicates that he made the decision to reassign Plaintiff to a Package Planner position because it was a "great job opportunity" that would "provide structure, accountability, and an opportunity for [Plaintiff] to start at a clean slate" under Section Manager Mills.  ECF No. 30-13 at 48.  Horgan also testified that the move was beneficial to Plaintiff's long-term career, as "anybody that wants a future in Industrial Engineering has to pass through Package IE" and "that's the way they get advanced."  *Id.* at 52. Further, Plaintiff's previous position as a Satellite Coordinator dissolved following Plaintiff's transfer, and its duties were absorbed by the Package Planner positions, including Plaintiff's new position.  ECF No. 30-11 at 64.  Based on these proffered legitimate, non-discriminatory reasons for the reassignment, the burden shifts back to Plaintiff to prove, by a preponderance of the evidence, that these stated reasons are a pretext for discrimination.

The court finds that Plaintiff has failed to provide such evidence of pretext.  To support a finding of pretext, Plaintiff offers her deposition testimony disputing the alleged attendance issues that may have contributed to her reassignment.  ECF No. 30 at 27.  However, challenging the validity of the underlying attendance issues does not support a finding of pretext, as it fails to address the main reasons proffered by Defendant in support of the transfer.  *See Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory

explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it"); *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 398 (2011) ("Even if . . . investigations [against the plaintiff] were improper or substandard, that does little to help her establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination.").

Further, with regard to Defendant's contention that the Package Planner position would provide Plaintiff with structure and accountability and would be beneficial to her future career, Plaintiff offers only her own deposition testimony disputing these conclusions to support a showing of pretext.  However, it is well established that "genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions."  *United States v. Middleton*, 2:04-0357-DCN-GCK, 2005 WL 2201091, at *2 (D.S.C. May 19, 2005).  The court finds that Plaintiff has not provided sufficient evidence to show, by a preponderance of the evidence, that the legitimate, non-discriminatory reasons for the September 2009 reassignment were a pretext for unlawful discrimination. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.").

Defendant's motion for summary judgment is granted as to Plaintiff's race and sex discrimination claim.

**B. *Retaliation***

Plaintiff next alleges that her September 2009, October 2010, and July 2011 job reassignments were retaliatory actions taken in violation of Title VII. The two protected activities forming the basis of Plaintiff's retaliation claim include Plaintiff's August 21, 2009 email to Morris and Plaintiff's December 2009 EEOC charge. ECF No. 30 at 32-34. Defendant moves for summary judgment on the grounds that Plaintiff's August 21, 2009 email does not qualify as a protected activity for the purposes of Title VII. Defendant concedes that Plaintiff's December 2009 EEOC charge is a protected activity, but moves for summary judgment on the grounds that Plaintiff has failed to establish a prima facie case of retaliation based on either the September 2009, October 2010, or July 2011 reassignments.

**1. *Legal Standard***

Title VII prohibits an employer from discriminating or retaliating against an employee because the employee has "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *See* 42 U.S.C. § 2000e–3(a). To establish a prima facie case, a plaintiff must show: "(1) that she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).

"Protected activities fall into two distinct categories: participation or opposition." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). More specifically, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an

employee for opposing discriminatory practices in the workplace." *Id.* at 259. "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.* Although Title VII does not protect general complaints of unfair treatment, *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, at *5 (4th Cir. 1999) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)), "an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012).

With regard to the causal requirement found in the third element of proof, this element may be satisfied by close temporal proximity between the protected activity and the adverse employment action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). However, "[i]n cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotations omitted).

**2.  *Magistrate Judge's Report and Recommendation***

The Magistrate Judge first considered whether Plaintiff's August 21, 2009 email to Morris could be considered a protected activity under Title VII. The Magistrate Judge recognized that while Plaintiff need not have filed a formal complaint with the EEOC to engage in protected activity, Plaintiff's email did need to "oppose[] practices made unlawful by Title VII." ECF No. 35 at 9. However, the Magistrate Judge concluded that Plaintiff's email to Morris did not allege discrimination or unfair treatment based on race or sex. *Id.* at 10. In that regard, the Magistrate Judge concluded that Plaintiff's August 21, 2009 was not a protected activity under Title VII and

16

could not form the basis of Plaintiff's retaliation claim.

The Magistrate Judge then turned to Plaintiff's December 2009 EEOC charge, which the Magistrate Judge recognized was properly classified as a protected activity under Title VII. *Id.* at 10. Despite being a protected activity, the Magistrate Judge concluded that there was no causal connection between Plaintiff's EEOC charge and her October 2010 or July 2011 reassignments. *Id.* Specifically, the Magistrate Judge noted that "the respective 10- and 18- months gaps between the protected activity and the reassignments are insufficient to demonstrate a causal connection" through temporal proximity. *Id.* at 11. Further, the Magistrate Judge found that Plaintiff had not shown a causal connection based on retaliatory animus. The Magistrate Judge noted that even if Horgan had the ability to influence Plaintiff's reassignments following his transfer, Plaintiff had not provided any evidence of retaliatory animus. *Id.*

In reaching her conclusion regarding causation, the Magistrate Judge did not evaluate whether Plaintiff's October 2010 and July 2011 reassignments constituted adverse employment actions under Title VII. *Id.* Instead, the Magistrate Judge assumed, without deciding, that such conduct constituted adverse employment actions and performed an analysis of the causation element under this assumption. *Id.* Because Plaintiff failed to establish the necessary causal connection with regard to her December 2009 EEOC charge, the Magistrate Judge recommended the court grant Defendant's summary judgment motion as to Plaintiff's retaliation claim.

**3.  *Objections***

Plaintiff first objects to the Magistrate Judge's determination that Plaintiff's August 21, 2009 email to Morris could not be considered a protected activity for the purposes of Title VII. Plaintiff argues that her email details specific treatment by both Hicks and Horgan and also references

17

Defendant's policy on the value of a "diverse workforce." ECF No. 36 at 8. Based on these references, Plaintiff contends that she has "established a genuine issue of material fact with regards [sic] to whether [the email] constitutes a complaint of racial discrimination." *Id.* at 8-9.

Plaintiff also objects to the Magistrate Judge's conclusion that she failed to establish a causal connection between her EEOC charge and her October 2010 or July 2011 reassignments. *Id.* at 9. With respect to the Magistrate Judge's conclusion that the 10-month and 18-month gaps between Plaintiff's EEOC charge and her October 2010 and July 2011 reassignments did not evidence temporal proximity, Plaintiff contends that the Magistrate Judge disregarded her deposition testimony that she made "repeated verbal complaints" to Morris regarding these reassignments. *Id.* Plaintiff argues that such testimony raises a genuine issue of fact as to whether a causal connection can be established based on temporal proximity. Further, with respect to the Magistrate Judge's conclusion that Plaintiff failed to show any retaliatory animus, Plaintiff contends that her "repeated verbal complaints coupled with her December EEOC charge" create a genuine issue of material fact for a jury with regard to whether retaliatory animus existed on the part of Morris. *Id.*

### 4. *Analysis*

After careful review of the record, the court concurs with the Magistrate Judge's recommendation regarding Plaintiff's retaliation claim. With respect to Plaintiff's August 21, 2009 email to Morris, the court finds that this email is not properly classified as protected activity for the purposes of Title VII. Plaintiff's email to Morris contained allegations that she was "being treated unfairly," had been "spoken to in a very unprofessional, disrespectful, and degrading manner," had been "verbally threatened about [her] job and [her] life," and had been "openly embarrassed and humiliated." ECF No 29-6 at 55. However, these allegations did not make any reference to

18

discriminatory treatment based on race or sex. *See Gray v. Walmart Stores, Inc.*, 7:10-CV-171-BR, 2011 WL 1831780, at *7 (E.D.N.C. May 12, 2011) (finding that a plaintiff's internal complaints did not constitute protected activity because the complaints made "no mention whatsoever of racial discrimination" and "no reasonable person could objectively believe that plaintiff's internal complaints were meant to oppose practices made unlawful by Title VII"). Further, the chronology of events attached to the email does not specifically mention race or sex discrimination and does not allege any conduct that could have been understood by Defendant to involve race or sex discrimination. ECF No. 29-6 at 55-69. *See Wehunt v. R.W. Page Corp.*, 352 F. Supp. 2d 1342, 1358 (M.D. Ga. 2004) ("It is not enough to simply complain in a racially neutral way about an employer's practices, and then expect the employer to speculate as to whether such complaints may be motivated by an employee's subjective and undisclosed belief that the employer was engaged in race discrimination.").

To the extent Plaintiff argues that her reference in the email to a provision from Defendant's employment policy mentioning a "diverse workforce" is sufficient to have placed Defendant on notice that Plaintiff's complaints were based on racial discrimination, the court finds such an argument unavailing. Specifically, the portion of Defendant's employment policy referenced by Plaintiff in the email reads as follows:

> It is every person's responsibility to promote fairness in [sic] workplace and develop mutual trust among all UPS people. We do this through strong leadership skills fostered by honest relationships, recognition of the value a diverse workforce brings to our company, and a commitment to helping each person reach his or her fullest potential.

ECF No. 29-6 at 55. This general reference to a "diverse workforce" in the context of Defendant's employment policy is not sufficient to create an issue of fact as to whether Defendant should have

known Plaintiff's complaint was based on race or sex discrimination. *See Barber*, 68 F.3d at 702

("A general complaint of unfair treatment does not translate into a charge of illegal . . .

discrimination"). The court finds that Plaintiff's August 21, 2009 email to Morris, including the

attached chronology, is not a protected activity for the purposes of Title VII and cannot be the basis

of Plaintiff's retaliation claim.

With respect to Plaintiff's December 2009 EEOC charge, the parties concede, and the court

agrees, that Plaintiff's EEOC charge is properly considered protected activity under Title VII.

However, the court finds that Plaintiff has failed to provide sufficient evidence that her October 2010

or July 2011 reassignments were causally connected to the December 2009 EEOC charge.[2] These

employment actions took place 10-months and 18-months after Plaintiff's December 2009 EEOC

charge was filed, respectively. The Supreme Court has recognized that "cases that accept mere

temporal proximity between an employer's knowledge of protected activity and an adverse

employment action as sufficient evidence of causality to establish a prima facie case uniformly hold

that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist.*, 532 U.S. at 273. Here,

the 10-month and 18-month gaps between the protected activity and the reassignments are

insufficient to demonstrate a causal connection based on temporal proximity alone. *See Pascual v.*

*Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (affirming summary judgment

where the only evidence provided by the plaintiff to support a causal connection was a 3-4 month

---

[2]    The court assumes for the purposes of its causation analysis that Plaintiff's October
2010 and July 2011 reassignments qualify as "adverse employment actions" for the
purposes of Title VII. However, because the court finds that Plaintiff has failed to
provide evidence of a causal connection sufficient to satisfy the third element of
proof, the court need not reach the question of whether the October 2010 and July
2011 reassignments constitute "adverse employment actions."

gap between the protected activity and the adverse employment action).

Because Plaintiff cannot establish a causal connection based on temporal proximity alone, the court must consider whether Plaintiff has provided other evidence of retaliatory animus during the intervening time period. The court finds that Plaintiff has not provided sufficient evidence of retaliatory animus to show a causal connection. Plaintiff's main argument in support of retaliatory animus is that despite Horgan's transfer to a position as a Contract Administrator in the Corporation Real Estate Development Department in Atlanta, Georgia, Horgan still "played a role" in her reassignments and "had influence on the powers-that-be to make the move." ECF No. 30-11 at 77. However, the record is devoid of any evidence, beyond Plaintiff's own statements, that Horgan's position allowed him influence over employment decisions regarding Plaintiff, much less that he actually asserted such influence to facilitate Plaintiff's reassignments. *See Mackey v. Shalala*, 360 F.3d 463, 469-70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a *prima facie* case of discrimination"); *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) ("[The plaintiff's] own naked opinion, without more, is not enough to establish a prima facie case of age discrimination.").

Further, to the extent Plaintiff contends that retaliatory animus is evident through her interactions with Morris, the Court finds this argument to be without merit. To support a finding of retaliatory animus, Plaintiff's objections cite to her deposition testimony in which she indicates that her reassignments came after her August 21, 2009 email to Morris and after the filing of her December 2009 EEOC complaint. ECF No. 36 at 10. Further, the cited testimony indicates that Plaintiff made additional "verbal" complaints to Morris, but Morris did nothing to help Plaintiff. *Id.* Based on this testimony, Plaintiff contends that there is a "clear genuine issue of material fact

for a jury with regard to there being retaliatory animus on the part of Frank Morris." *Id.* However, beyond her own deposition testimony, Plaintiff has provided neither evidence of any "verbal" complaints made to Morris nor evidence to support a finding of retaliatory animus on the part of Morris. As previously discussed, such self-serving testimony is insufficient, on its own, to support the necessary showing of causation. The Court finds that Plaintiff has failed to establish a causal connection between her protected activity and her 2010 and 2011 reassignments.[3] Defendant's motion for summary judgment is granted as to Plaintiff's Title VII retaliation claim.

**C. *Hostile Work Environment***

Plaintiff alleges that she was subjected to a racially hostile work environment in violation of Title VII based on the harassing conduct she experienced under the supervision of Horgan and Hicks. *See* ECF No. 1 at 5-6. Defendant contends that Plaintiff has failed to show that she was subjected to any harassing conduct, much less conduct sufficiently severe and pervasive to be actionable under Title VII. ECF No. 29-1 at 17.

**1. *Legal Standard***

Title VII is violated when the workplace is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). To state a prima facie case of a hostile work

---

[3]     Defendant contends that Plaintiff's October 2010 reassignment is not properly before the court, as Plaintiff did not reference the October 2010 reassignment in her complaint in the underlying matter or in her EEOC charge. However, the court need not address this argument. Even construing Plaintiff's complaint in the broadest sense to include the October 2010 transfer, the court finds no causal connection between the October 2010 transfer and Plaintiff's EEOC charge.

environment based on race, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 347 (4th Cir. 2005); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 297 (4th Cir. 2004); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). To satisfy the causation requirement imposed in the second element, a plaintiff must show that "but for" her race, she would not have been a victim of the alleged harassment. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

Further, to satisfy the third element of proof, a plaintiff must show "both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). First, a plaintiff must show that she "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21. Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998). When analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 23; *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (noting that incidents that would objectively give rise to bruised or wounded feelings or complaints but are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard necessary to state a hostile work environment claim); *Hopkins v. Baltimore Gas*

*& Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996).

**2.  *Magistrate Judge's Report and Recommendation***

The Magistrate Judge concluded that Plaintiff failed to show that her work environment was

objectively hostile.  ECF No. 35 at 12.  In doing so, the Magistrate Judge recognized the following

instances of conduct offered by Plaintiff to support her claim for hostile work environment based on

race:

- Horgan was curt when Plaintiff introduced herself to him in March 2009, Pl. Dep. II 8:4-22;
- Plaintiff's desk was relocated to a different area in the IE department in July 2009, Entry #29-6 at 56-57;
- Plaintiff was required to communicate her arrival and departure time in July and August 2009, *id.*;
- Plaintiff's laptop was replaced with a desktop computer in July 2009, Pl. Dep. I 118:1–12;
- Horgan's demeanor was allegedly physically threatening in a meeting and he told her he would "throw her out of his office and onto the street" if she spoke to him the way she spoke to Hicks, Entry #29-6 at 61;
- Plaintiff was not allowed to attend United Way events sponsored by UPS in July and August 2009, Pl. Dep. I 119:14–121:13.

*Id.* at 11-12.  The Magistrate Judge concluded that decisions such as the location of Plaintiff's desk,

whether Plaintiff was provided with a laptop, and whether Plaintiff was required to notify her

superiors of her arrival and departure times are properly classified as "business decisions" that do

not evidence harassing conduct.  *Id.* at 12.  With regard to Horgan's comment that he would "throw

[Plaintiff] out of his office and onto the street," the Magistrate Judge found that Plaintiff presented

no evidence that the comment was objectively threatening.  *Id.* at 12-13.  Further, the Magistrate

Judge found that, standing alone, the comment did not rise to the severe or pervasive level necessary

to sustain a hostile work environment claim.  *Id.* at 13.

Additionally, the Magistrate Judge noted that Plaintiff provided no evidence that the alleged

24

hostile work environment was because of her race. *Id.* The Magistrate Judge observed that Plaintiff's only support for her claim that the conduct was racially motivated "is that none of her white counterparts were subjected to such treatment." *Id.* Based on this argument, the Magistrate Judge concluded that Plaintiff was impressibly attempting to make a disparate treatment claim within her hostile work environment claim. *Id.* For these reasons, the Magistrate Judge recommended that Defendant's motion for summary judgment be granted as to Plaintiff's hostile work environment claim.

### 3. *Objections*

Plaintiff first objects to the Magistrate Judge's classification of certain allegedly hostile conduct presented by Plaintiff as being "business decisions." ECF No. 36 at 12. Plaintiff contends that such conduct permeated the workplace and created an abusive work environment for Plaintiff. *Id.* Plaintiff also highlighted further examples of alleged harassment in addition to those outlined by the Magistrate Judge, including Horgan giving another employee credit for Plaintiff's work on the Hurricane Contingency Plan, open discussions of Plaintiff's private personnel information in front of other employees, and false allegations of Plaintiff's attendance issues. *Id.*

With regard to Horgan's statement that he would "throw [Plaintiff] out of his office and onto the street," Plaintiff argues that this statement is "clearly physically objectively threatening" and evidences a "physical threat and continuing pervasive behavior by Horgan." *Id.* at 13. To further support a showing of a hostile work environment, Plaintiff points to the July 30, 2009 meeting with Horgan and Hicks in which Plaintiff alleges that Horgan yelled at her, pointed his finger and cell phone in her face, and walked towards her in a very threatening manner. *Id.* at 13-14.

Finally, Plaintiff objects to the Magistrate Judge's assertion that Plaintiff is attempting to

transform her disparate treatment claim into a hostile work environment claim. *Id.* at 15. Plaintiff contends that "[t]he record is clear" that Plaintiff was subjected to a hostile work environment based on her race due to the fact that Plaintiff's white counterparts were not subjected to similar treatment. *Id.* Further, Plaintiff contends that the issues surrounding Plaintiff's hostile work environment claim are more properly resolved by a jury as they "implicate genuine issues of material fact with regards [sic] to Defendant's motivations for allegedly singling Plaintiff out and harassing her." *Id.*

**4.** *Analysis*

After careful review of the record, the court concurs with the Magistrate Judge's recommendation regarding Plaintiff's hostile work environment claim. The court finds that Plaintiff has failed to produce evidence that the alleged hostile work environment was based on race. To support a finding of racial animus, Plaintiff contends that her white counterparts were not subjected to hostile and harassing conduct. However, beyond this contention itself, Plaintiff offers no evidence of any racial animosity. *See Lauture v. St. Agnes Hosp.*, CIV.A. CCB-08-943, 2009 WL 5166253, at *7 (D. Md. Dec. 29, 2009) *aff'd sub nom.*, 429 F. App'x 300 (4th Cir. 2011) ("[U]nsupported, conclusory statements that the plaintiff was treated differently because of her race or national origin are insufficient to defeat summary judgment."). Viewing the evidence in the light most favorable to Plaintiff, the court acknowledges that Horgan and Hicks may not have professionally valued Plaintiff or personally liked Plaintiff, and these feeling may have contributed to certain unprofessional interactions between Plaintiff and her supervisors. However, "[t]he fact that [Plaintiff's] supervisors may have disliked her and made h[er] job more stressful as a result does not establish a claim for hostile work environment, absent some independent evidence of racial animosity." *Id.* (internal quotations omitted). Indeed, "inferring that all of the incidents [alleged by

26

Plaintiff] were based on . . . race would transmute workplace disagreements between individuals of different races . . . into actionable race . . . discrimination." *Patterson v. Cnty. of Fairfax*, 215 F.3d 1320 (4th Cir. 2000) (internal quotations omitted). Because Plaintiff has failed to provide sufficient evidence to show that "but for" her race, she would not have been subjected to the alleged hostile work environment, the court finds that Plaintiff has failed to prove her hostile work environment claim. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (recognizing that while the plaintiff had shown she and her superior did "not see eye-to-eye," this "difference of opinion, coupled with [the plaintiff's] conclusory allegations of racism, [could not] reasonably support the conclusion that [the plaintiff's] discharge was motivated by racial animus").

Defendant's motion for summary judgment is granted as to Plaintiff's Title VII hostile work environment claim.

## IV.  CONCLUSION

Upon careful consideration of the entire record, the court agrees with the recommendation of the Magistrate Judge. Defendant's motion for summary judgment, ECF No. 29, is **GRANTED** and this case is **DISMISSED**. The court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. Pursuant to the court's disposition of Defendant's motion for summary judgment, Plaintiff's motion for a hearing to address Defendant's motion for summary judgment, ECF No. 39, is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
September 27, 2013

27